# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:18-cv-116-FDW

| | |
|---|---|
| ELI ALVAREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| KENNETH LASSITER, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of the Plaintiff's Amended Complaint (Doc. No. 9-1). Also pending are Plaintiff's Motion to Amend, (Doc. No. 9), Motion for Preliminary Injunction, (Doc. No. 5), and a Motion for the Appointment of Counsel, (Doc. No. 6). He is proceeding *in forma pauperis*. (Doc. No. 17).

## I. BACKGROUND

*Pro se* incarcerated Plaintiff filed a civil rights suit pursuant to 42 U.S.C. § 1983 on his own behalf as well as four other inmates alleging, *inter alia*, that their forced participation in an RDU Program at Marion Correctional Institution violates their constitutional rights. (Doc. No. 1). The Complaint was so seriously deficient that the Court was unable to complete initial review. On May 15, 2018, the Court ordered Plaintiffs to file IFP applications and an Amended Complaint within 21 days. (Doc. No. 3). The Court cautioned Plaintiffs that failure to comply would probably result in dismissal. The Court also informed Plaintiffs that the filing of more than one Amended Complaint would probably result in the opening of separate § 1983 cases. Plaintiffs did not file a single Amended Complaint pursuant to the Court's instruction and the case was severed. (Doc. No. 14).

1

Plaintiff Alvarez names the following as Defendants in their official capacities in his Amended Complaint, (Doc. No. 9-1): Director of Prisons Kenneth Lassiter, Marion C.I. Superintendent Hubert Corpening, Case Manager/RDU Programmer Gregory Swink, Assistant Superintendent Donny Watkings, and RDU-Director Jenny Jenkins.

Construing Plaintiff's Amended Complaint liberally and accepting it as true, he was transferred to Marion C.I. on March 9, 2017. The Defendants made up rules and implemented them in violation of Plaintiff's constitutional rights. They took his religious literature and law books, personal property including his radio and electric razor, and legal documents in violation of their own policies and due process. Defendants put Plaintiff in the RDU Program against his will and without due process. His participation in the RDU Program was not court-ordered. Further, "[t]hey are not using funds adequately, are lying about our housing status." (Doc. No. 9-1 at 6). Plaintiff is unable to practice and learn about his religion of Islam and is unable to properly litigate his cases. He is being forced to talk about confidential issues including his personal life and medical health. Plaintiff has been put in segregation without due process where he will remain indefinitely until he completes the RDU Program.

Plaintiff seeks damages, transfer out of Marion C.I., a change in the RDU rules or shutdown of the RDU program; creation of a classification board, and a rule making participation in the RDU Program voluntary.

## II. PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citing Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). A preliminary injunction is a remedy that is "'granted only sparingly and in limited circumstances.'" Micro Strategy, Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting

Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991)).

To obtain a preliminary injunction, a movant must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. DiBiase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) (quoting Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008)).

The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. See Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013). By contrast, a mandatory injunction "goes well beyond simply maintaining the status quo *pendent lite*, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." Taylor v. Freeman, 34 F.3d 266, 270 n. 2 (4th Cir. 1994) (quoting Martinez v. Matthews, 544 F.2d 1233, 1243 (5th Cir. 1976)). A mandatory injunction is warranted in only the most extraordinary circumstances. Id. (citing Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)). Further, it is well established that "absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities." Taylor, 34 F.3d at 268; see Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982) ("judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.").

Plaintiff has filed an "Affidavit in Support of Preliminary Injunction," (Doc. No. 5), in which he claims that there is a campaign of harassment and violations of constitution and policy at Marion C.I. The main gist of his Motion is that he and the other Plaintiffs will continue to remain on segregation without their property and other privileges so long as they refuse to participate in

the RDU Program. He claims that, as long as he and the other Plaintiffs stay at Marion C.I., "a lot of bad stuff is bound to take place…" because the Plaintiffs have to "act up" to get things done. (Doc. No. 5 at 3). He asks the Court to have Plaintiffs removed from Marion C.I. until this suit is complete to protect them from further harm by Defendants. Attached to Alvarez's pleading are "Affidavits" of Plaintiffs Johnson and Carter seeking transfer to another facility because of inhumane conditions at Marion C.I., until this lawsuit is finished. (Doc. Nos. 5-6, 5-7); (Doc. No. 4).

Plaintiff has failed to establish that he is likely to succeed on the merits or that he is likely to suffer irreparable harm in the absence of preliminary relief. Therefore, his request for preliminary injunctive relief will be denied.

### III. PENDING MOTIONS

Plaintiff Alvarez has filed a Motion to Amend, (Doc. No. 9), to which he attaches his Amended Complaint. The Motion will be denied as moot because the Court previously granted Plaintiff leave to file an Amended Complaint. (Doc. No. 3). Plaintiff's Motion is also moot insofar as he seeks relief on behalf of the other Plaintiffs because they, too, were granted leave to amend and Plaintiff does not have standing to request relief on their behalf.

In his Motion to Amend, Plaintiff appears to seek class certification. (Doc. No. 9 at 2). His request will be denied. See Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (the Fourth Circuit does not certify a class where a *pro se* litigant will act as the representative of that class); see also Hafner v. Office of Thrift Supervision, 977 F.2d 572 (4th Cir. 1992) (holding that, because plaintiff is *pro se* and is not an attorney, although he filed pleadings purporting to represent a group, he is "barred from representing anyone other than himself.")(unpublished).

Plaintiff has filed a Motion for the Appointment of Counsel, (Doc. No. 6), that purports to be filed on behalf of all the Plaintiffs. He argues that Plaintiffs are unable to afford counsel; their imprisonment and the number of Plaintiffs involved in the action will greatly limit their ability to litigate; the eventual separation of Plaintiffs into different prisons or units will make it hard to stay in contact with each other and may lead to repetitious filing of documents; the issues involved in the case are complex and will require significant research and investigation; Plaintiffs have no access to a law library and limited knowledge of the law; Plaintiffs are all in segregation without access to their legal materials; and a trial will likely involve conflicting testimony and cross-examination which will be better presented by counsel.

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). This case does not present exceptional circumstances that justify appointment of counsel. Moreover, Plaintiff Alvarez does not have standing to request relief on behalf of the other Plaintiffs. Therefore, Plaintiff Alvarez's Motion for Appointment of Counsel will be denied.

### IV.  SCREENING STANDARD

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios.

Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

**V.    DISCUSSION**

**(1)    Claims on Behalf of Others**

Plaintiff attempts to present claims on behalf of others. His request for class certification

has been denied and his status as a *pro se* prisoner precludes him from making claims on behalf of others. See Hummer v. Dalton, 657 F.2d 621, 635-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.").

Therefore, to the extent the Amended Complaint seeks relief on behalf of individuals other than the Plaintiffs, these claims are dismissed.

**(2)** **Sovereign Immunity**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens of any Foreign State." U.S. Const. Amend. 11. Thus, § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages are barred absent a waiver by the State or a valid congressional override. Kentucky v. Graham, 473 U.S. 159, 169 (1985). "In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir.1993). "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Therefore, a lawsuit against an officer in his official capacity is, in substance, a claim against the governmental entity and should be subject to the same analysis. See Almone v. City of Long Beach, 478 F.3d 100, 106 (2d Cir. 2007); see Hutto v. S.C. Retirement Sys., 773 F.3d 536, 549 (4th Cir. 2014) (State officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State). Whether an officer is deemed a "state official" depends at least in part on state law. See Mt. Healthy City Sch. Bd. Of Ed. v.

Doyle, 429 U.S. 274, 280 (1977). However, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." Will v. Michigan Dep't of State Police, 491 U.S. 58, 93 (1989) (quoting Graham, 473 U.S. at 167, n. 14).

Plaintiff Alvarez has chosen to sue Defendants only in their official capacities. See (Doc. No. 9-1 at 2-4). His claims for damages and retrospective injunctive relief are barred by sovereign immunity. The Amended Complaint is therefore dismissed except insofar as Plaintiff requests prospective injunctive relief.

**(3)     Conditions of Confinement**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-34.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A

8

sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the minimal civilized measure of life's necessities." Id. at 298 (citing Rhodes, 452 U.S. at 347).

Plaintiff claims that he has been placed in segregation, that his personal, legal, and religious property has been taken from him, and that he is being required to participate in the RDU Program against his will.

These conditions do not constitute a sufficiently serious and extreme deprivation of the minimum civilized measure of life's necessities as contemplated by the Eighth Amendment. See Mitchell v. Rice, 954 F.2d 187, 191 (4th Cir. 1992) (by adopting a totality of the circumstances test, the court has never held that the denial of out-of-cell exercise opportunities is *per se* unconstitutional); Sweet v. South Carolina Dep't of Corr., 529 F.2d 854, 866 (4th Cir. 1975) (restriction of two exercise periods of one hour per week may not ordinarily transgress constitutional standards if confined to a relatively short period of time but that result may be different where the restriction has extended over a period of years and is likely to extend indefinitely); Mines v. Barber, 610 Fed. Appx. 838 (11th Cir. 2015) (affirming the dismissal of plaintiff's Eighth Amendment claim that he was deprived of property during a prison administrative search where he did not allege that the seizure caused him physical pain or created an unreasonable risk to his health or safety); Thomas v. New Mexico Corr. Dep't, 272 Fed. Appx. 727 (10th Cir. 2008) (prisoner's allegation that he was deprived of personal belongings does not rise to the level of an Eighth Amendment violation). Therefore, Plaintiff's claims of cruel and unusual conditions of confinement are insufficient to proceed and will be dismissed.

**(4)** **Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be

deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

**(A)** **Property**

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff alleges that Defendants made up and implemented rules under which they "took all of [his] personal property against their own policies." (Doc. No. 9-1 at 5).

Construing the Amended Complaint liberally, Plaintiff appears to allege that his property loss was due to RDU rules that Defendants created and implemented that are contrary to DPS policy, rather than from a random, unauthorized action. Therefore, this claim will be permitted to proceed.

 **(B)**   **RDU Program**

A plaintiff does not have a federally protected liberty interest in any particular housing or classification unless it exceeds the scope of his original sentence and imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472 (1995); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (*en banc*) ("[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation) and the denial of privileges … are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and efficiently.").

Plaintiff states that he has been placed in the RDU Program against his will, that he is being forced to talk about his personal life and medical history as part of the program, and that his refusal to participate has resulted in his indefinite placement in segregation. However, he does not explain how the conditions of his confinement there pose an atypical and significant hardship in relation to the ordinary incidents of prison life. Therefore, this claim is too vague and conclusory to proceed and it will be dismissed.

**(5)**   **Access to courts**

Inmates have a constitutional right to a "reasonably adequate opportunity to present

claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To make out a *prima facie* case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff alleges that Defendants took his law books and legal documents and that he is unable to properly litigate his "cases" (Doc. No. 9-1 at 6). These vague and conclusory allegations are insufficient to state a claim for deprivation of access to the courts. Therefore this claim will be dismissed.

**(6)** **Freedom of Religion**

The First Amendment of the Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). For government conduct to survive scrutiny under the Establishment Clause, "(1) it must have a secular purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster an excessive government entanglement with religion." Buxton v. Kurtinitis, 862 F.3d 423, 432 (4th Cir. 2017) (citing Lemon

12

v. Kurtzman, 403 U.S. 602, 612–13 (1971)); see also Madison v. Riter, 355 F.3d 310, 316 (4th Cir. 2003). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90.

Plaintiff alleges that Defendants took his religious books and literature and that he is unable to practice and learn about his religion of Islam.

This claim is insufficient to pass initial review because Plaintiff's vague and conclusory allegations fail to establish that he had a sincere religious belief or that the official action or regulation substantially burdened his exercise of that belief.

**(7)** **Funding and Recordkeeping**

Plaintiff appears to allege that Defendants are not using DPS funds properly in relation to

the RDU Program and that they are lying about participants' housing status.

Plaintiff fails to allege how any of the Defendants' expenditures or recordkeeping with regards to prisoner housing deprived him of any rights and therefore, this claim will be dismissed.

## VI. CONCLUSION

The Amended Complaint will be permitted to proceed on Plaintiff's claim for prospective injunctive relief for the alleged deprivation of property without due process. All the remaining claims are dismissed. Plaintiff's Motion for Preliminary Injunction and Motion for the Appointment of Counsel are denied, and the Motion to Amend is denied as moot.

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiffs' claim that Defendants deprived him of properly without due process for prospective injunctive relief has passed initial review under 28 U.S.C. § 1915. The remaining claims are dismissed for seeking relief against immune parties and for failure to state a claim on which relief can be granted pursuant to § 1915(e)(2)(B)(ii) and (iii).

2. Plaintiff Alvarez's Motion to Amend, (Doc. No. 9), is **DENIED** as stated in this Order; the Clerk of Court shall docket the Amended Complaint, (Doc. No. 9-1), as the operative Amended Complaint.

3. Plaintiff's Motion seeking preliminary injunctive relief, (Doc. No. 5), is **DENIED**.

4. Plaintiff's Motion for the Appointment of Counsel, (Doc. No. 6), is **DENIED**.

5. **IT IS FURTHER ORDERED THAT** Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Lassiter, Corpening,**

**Watkings, Jenkins,** and **Swink** who are current or former employees of NC DPS.

Signed: November 6, 2018

Frank D. Whitney
Chief United States District Judge